# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **MILDRED WICKER,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| vs. : | 5:04-CV-296 (CAR) |
| : | |
| **W&S ENTERPRISES, INC., d/b/a** : | |
| **HUDDLE HOUSE #319, et al.,** : | |
| : | |
| **Defendants.** : | |

## *ORDER ON MOTION FOR SUMMARY JUDGMENT*

Before the Court is Defendants' Motion for Summary Judgment [Doc. 38]. Plaintiff, proceeding *pro se*, filed a Response [Doc. 39] to the motion. For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED**.

### BACKGROUND

Plaintiff Mildred Wicker, a black female, brings this action against her former employer, W&S Enterprises, Inc., d/b/a Huddle House #319 ("Huddle House"), complaining that she was terminated from employment because of her race, in violation of Title VII of the Civil Rights Act of 1964. The facts relied upon by the Court in arriving at its decision, taken in the light most favorable to Plaintiff, are as follows:

At all relevant times to the claims asserted herein, during November and December 2003, Plaintiff was employed by Huddle House as a cook assigned to work the third shift, from 10pm to 6am.[1] Marie Barfield, a white female, also worked at Huddle House as a cook, but she worked on

---

[1] Plaintiff was first employed by Huddle House as a server/cook from 1994 through 1999, when she left to pursue a different job opportunity with a better hourly rate. Plaintiff was re-

the shift immediately preceding Plaintiff's, from 2pm to 10pm. Plaintiff would frequently see Barfield leaving work when she started her shift.

On or about November 30, 2003, Plaintiff came to work and noticed a bag of garbage by the back door of the restaurant. Plaintiff described the garbage as leaking with "all kind of nasty water." Plaintiff asked Barfield to help her take out the trash, and Barfield agreed. Because the back door was locked, Plaintiff and Barfield took the garbage out of the front door of the Huddle House. Two days later, on December 2, 2003, the assistant district manager, Charles Bailey, a white male, terminated Plaintiff's employment, in part, because Plaintiff had taken garbage out of the front door of the restaurant, in violation of the health code. Although Barfield had also taken the trash out of the front door, she was not terminated.

Bailey states he terminated Plaintiff based on the recommendation of–and the information provided by–the Huddle House manager, Kathy Lyons, a black female and Plaintiff's supervisor. Bailey states Lyons informed him that Plaintiff had previously been chastised for taking trash out of the front door of the restaurant and that she had refused to perform several of her assigned duties as a cook. Although Lyons also informed Bailey that Barfield had taken the trash out the front door with Plaintiff, she did not recommend Barfield be terminated because Barfield had not been a "disciplinary problem" as had Plaintiff.

Plaintiff contends she was wrongfully terminated because of her race. Plaintiff claims that Lyons had never previously warned her not to take the trash out of the front door of Huddle House, that Plaintiff had never refused to perform any of her assigned duties as a cook, and that she had never been reprimanded or talked to about her work performance.

---

hired by Huddle House in 2002 as a cook.

## STANDARD OF REVIEW ON SUMMARY JUDGMENT

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted).

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26.

3

This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [her] case with respect to which [she] has the burden of proof." Celotex, 477 U.S. at 323.

## DISCUSSION

Claims for employment discrimination brought under Title VII may be established either through the introduction of direct evidence of discrimination or through circumstantial evidence that creates an inference of discrimination. Bass v. Bd. of County Comm'rs, 256 F.3d 1095, 1103 (11th Cir. 2001). In this case, Plaintiff's claims are based on circumstantial evidence, and therefore, her claims will be analyzed under the burden-shifting framework detailed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1972).

Under the McDonnell Douglas framework, the plaintiff must create an inference of discrimination by establishing a prima-facie case. Once the plaintiff has set out a prima-facie case, a presumption of discrimination arises, and the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the employer's conduct. Cooper v. S. Co., 390 F.3d 695, 723 (11th Cir. 2004). If the employer successfully rebuts the plaintiff's prima-facie case, the presumption of discrimination is eliminated, and the plaintiff must then show that the employer's proffered reasons for termination are pretextual, or present other evidence to show that discriminatory intent was more likely the cause of the employer's actions. Id. at 724. If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the employer's reasons are pretextual, the employer is entitled to summary judgment on the plaintiff's claims. Id. at 725.

Plaintiff complains that Bailey terminated her because of her race. To establish a prima facie case of race discrimination under the McDonnell Douglas framework, Plaintiff must show that: (1) she belongs to a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the job, and (4) similarly situated individuals outside of the protected class were treated differently. Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

For the purposes of the present motion, the Court will assume Plaintiff can establish a prima facie case of race discrimination: (1) as an African American, Plaintiff is a member of a protected class; (2) Plaintiff suffered an adverse employment action when she was terminated; (3) having previously worked at Huddle House as a cook, Plaintiff was certainly qualified for the cook position she held at the time of her termination; and (4) the Court will assume that Marie Barfield is a similarly situated, non-minority employee who was treated more favorably than Plaintiff.

However, even assuming that Plaintiff makes out a prima facie case of race discrimination, Plaintiff's claim still fails as a matter of law because there is no genuine issue of material fact as to whether Huddle House's proffered reasons for Plaintiff's termination are merely pretext for discrimination. Huddle House has presented evidence that Plaintiff's termination was legitimately based on her failure to meet performance expectations and, particularly, on her failure to follow the company's rules. For Plaintiff's claim to proceed, she must establish that this proffered reason is pretext.

To show that Huddle House's stated reasons are pretext, Plaintiff must produce evidence "demonstrat[ing] that the proffered reason was not the true reason for the employment decision." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997). This Plaintiff may do

either "by persuading the court that a discriminatory reason more likely motivated the employer," or "by showing that the employer's proffered explanation is unworthy of credence." Id. at 1528.

In this case, Plaintiff does not meet her burden. Plaintiff's "proof" of pretext centers around whether she had in fact received previous warnings not to take the garbage out of the front door, refused to perform her duties as a cook, or received other disciplinary actions. However, the Court does not consider the validity of the reasons underlying Plaintiff's termination; instead, the Court must look at whether Huddle House *believed* that Plaintiff had previously been warned not to take the garbage out of the front door and that she had previously refused to perform her duties as a cook, and, if so, whether these beliefs were the reasons behind Plaintiff's termination. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) ("[F]or an employer to prevail, the jury need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith *believed* plaintiff's performance to be unsatisfactory.") (citation and internal quotation marks omitted).

"Federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers,'" Title VII does not interfere. Id. (quoting Mechnig v. Sears, Roebuck & Co., 864 F.2d 1359, 1365 (7th Cir. 1988)). Rather, the court's "inquiry is limited to whether the employer gave an honest explanation of its behavior." Id.; see also Smith v. Papp Clinic, P.A., 808 F.2d 1449, 1452-53 (11th Cir. 1987) ("[I]f the employer fired an employee because it honestly believed that the employee had

6

violated a company policy, even if it was mistaken in such belief, the discharge is not 'because of race' and the employer has not violated [Title VII]."). In determining whether Huddle House's proffered reasons are pretext, courts must "be careful not to allow [plaintiffs] simply to litigate whether they are, in fact, good employees. Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002). The question courts must resolve is not whether the employer's conclusion that the employee is unsatisfactory is a correct one, but "whether it is an honest one." Id.

Here, Plaintiff presents and the record establishes absolutely no evidence that Plaintiff's termination was racially motivated or that Huddle House's reasons for Plaintiff's termination are unworthy of credence. Prior to terminating Plaintiff, the assistant district manager, Charles Bailey, spoke with Plaintiff's immediate supervisor, the manager of Huddle House, Kathy Lyons. Lyons, who, like Plaintiff, is a black female, recommended that Bailey terminate Plaintiff because, despite previous warnings otherwise, Plaintiff had carried the garbage out of the front door of the restaurant, had refused to perform some of her work duties, and had a checkered disciplinary history. There is no evidence to indicate that Bailey was acting under anything other than an honest, good faith belief that Plaintiff had in fact carried leaking garbage out of the front door of the restaurant, that she previously had been warned not to do so, that she had refused to perform some of her duties as a cook, and that she had previously posed problems warranting discipline. A reasonable employer would certainly be justified in terminating an employee who, despite previous warnings, carried a leaking, "nasty" bag of trash through the customer area of a restaurant, who refused to perform some of the duties required by her position, and who had a disciplinary history. Although Plaintiff disputes the information provided to Bailey by Ms. Lyons–contending that she in fact had not been previously warned nor

7

had any disciplinary problems–Plaintiff does not ascribe a discriminatory motive to Lyons. Instead, Plaintiff believed there was a personal issue or personality conflict between Ms. Lyons and herself. Federal law does not protect Plaintiff from personality conflicts, and Title VII certainly does not set forth "a general civility code for the American workplace." Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 80 (1998). Even if Bailey terminated Plaintiff on the *mistaken* belief that Plaintiff had prior disciplinary and work performance issues when in fact she did not, Plaintiff's claim would still fail as a matter of law. In order to prove pretext, a "plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by race." Brooks v. County Comm'n, 446 F.3d 1160, 1163 (11th Cir. 2006). There is no evidence to indicate that Bailey was acting on anything other than the information provided to him by Kathy Lyons and that he reasonably believed that information to be accurate.

## CONCLUSION

Because Plaintiff is unable to rebut Defendants' legitimate, nondiscriminatory reasons for her termination, Defendants' Motion for Summary Judgment [Doc. 38] is **GRANTED**.

**SO ORDERED,** this 24th day of May, 2007.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

SSH/aeg